UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

JIA DENG,                                     :
                                              :        **MEMORANDUM DECISION AND**
                                  Plaintiff,  :        **ORDER**
                                              :
              - against -                     :        21-cv-6081 (BMC)
                                              :
                                              :
FREQUENCY ELECTRONICS, INC., and              :
AJILON PROFESSIONAL STAFFING LLC,             :
                                              :
                                  Defendants. :
---------------------------------------------------------- X

**COGAN**, District Judge.

This case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, with

supplemental jurisdiction over claims under the New York Labor Law, N.Y. Lab. L. § 190 *et.*

*seq.* and § 650 *et seq.*  It is one of a number of cases arising out of the relationship between

staffing companies, the temporary workers that they hire, and the staffing company's clients, to

which the temporary worker is assigned.  When a worker believes she has not been paid or

treated in accordance with applicable wage laws, she sometimes will sue both the staffing

company and the staffing company's client under a "joint employer" theory.  That is the suit

here.

The issue before the Court is whether plaintiff must resolve her claims against both the

staffing company and its client in arbitration as opposed to in this Court.  I conclude that she

must.  The arbitration agreement is extremely broad, and it protects both the staffing company

and its client.  Defendants' motion to compel arbitration is therefore granted, with the exception

of her claims for statutory damages under New York law, which are dismissed for lack of

standing.

**BACKGROUND**

This case is about a six-month employment relationship.  The complaint alleges that defendants employed plaintiff from May 2019 to November 2019 as an office worker dealing with a variety of supply chain issues.  She was paid about $28 an hour and worked approximately 41-45 or more hours per week, but she was not paid overtime.  Plaintiff also alleges that defendants terminated her employment because she complained about defendants' unlawful practice of reducing plaintiff's overtime hours and not paying her for all the time and overtime that she worked.  Her complaint contains four claims for relief: (1) failure to pay overtime wages as required by the FLSA, 29 U.S.C. § 207; (2) failure to pay overtime wages as required by NYLL § 650 *et seq*.; (3) failure to provide plaintiff with the wage notices and wage statements required by NYLL § 190 *et. seq.*; and (4) retaliation under the FLSA, 29 U.S.C. § 215, and NYLL § 215.

Defendant ADO Professional Solutions, Inc. f/k/a Accounting Principals, Inc. d/b/a Ajilon, Parker + Lynch ("ADO"), and mistakenly sued here (for reasons explained below) as Ajilon Professional Staffing LLC, is one of the largest staffing service companies in the United States, with operations in 47 states, including New York.  "Staffing services" means that it recruits workers for clients who retain it for that purpose.  ADO clients will contract with ADO to find individuals with skillsets that the client needs.  ADO will recruit candidates and, if ADO hires a candidate, that candidate will be placed with the ADO client that has the need.

ADO uses a web-based application known as "USVerify" when it onboards individuals to whom it has made employment offers.  USVerify provides a means by which prospective employees, after they have received an offer of employment with ADO, can complete a package of initial employment forms online.  The signature on each form is applied electronically, and the

prospective employee first electronically signs a form agreeing that her electronic signature is binding and effective.  These forms include identity verification, a federal W-4 form, state tax forms, payroll options (which the employee selects), a contact notice form, releases to check the employee's background and references, selection of health care options, the employee handbook, forms required by state law dealing with things like disability, family, and pregnancy leave, forms required by ADO's client, if applicable, and, as relevant here, an arbitration agreement. The prospective employee can print or download any or all of these forms, including the arbitration agreement, before electronically signing them.

There is no dispute that plaintiff Jia Deng signed all the required forms online through USVerify, including the arbitration agreement, and that ADO countersigned that agreement.  The arbitration agreement provides that it is entered between plaintiff and "Accounting Principals dba Ajilon, Parker + Lynch", defined as "the Company."  Paragraph 1 of the arbitration agreement provides that

> the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect, except as noted in Paragraph 2.[1] These Rules can be obtained from the Company Human Resources Department or online at Employment Arbitration Rules and Mediation Procedures (https://www.adr.org/Rules).  The agreement to arbitrate includes any Claims that the Company may have against Employee, and/or that Employee may have against the Company, Company Client(s), and/or Company and/or Company Client(s)' officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set forth below.  The Company and Employee agree that the aggrieved party must give written notice of any Claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law sets forth for such Claim.  This Agreement shall be enforceable under and subject

---

[1] The exceptions to the AAA rules in Paragraph 2 require a court, not the arbitrator, to determine whether the agreement is valid and enforceable, and that the parties will select an arbitrator who accepts compensation on an hourly basis rather than the AAA's default of lump-sum or flat fee compensation.

to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and shall survive after the employment relationship terminates.

Immediately following this provision is a sentence stating:

> **BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY CLAIM COVERED BY THE ARBITRATION OBLIGATIONS IN THIS AGREEMENT DECIDED BY A JUDGE OR JURY IN A COURT**.

(Emphasis in original).

Defendant Frequency Electronics, Inc. ("FEI") supplies "time and frequency products" for ground, seaborne, airborne, and space terminals and platforms used by commercial, governmental and military systems suppliers to synchronize voice, data, and video transmissions in wireless communications systems. It also has a nationwide presence. From time to time, it enters into contracts with ADO under which ADO would provide FEI with short-term employees. Plaintiff was one of those employees.

## DISCUSSION

### I.  Applicable law

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). A court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)), and "draw[s] all reasonable inferences in favor of the non-moving party", Nicosia v. Amazon.com, 834 F.3d 220, 229 (2d Cir. 2016).

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the

making of that agreement 'in issue.'" Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (cleaned up).  Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).[2]

Courts consider four factors to determine whether to compel arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." McAllister v. Conn. Renaissance Inc., 496 F. App'x 104, 106 (2d Cir. 2012) (citing JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004)).

In many circumstances, the critical factor is "whether the parties have indeed agreed to arbitrate." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019) (citation omitted).  Courts resolve this issue by looking to state law.  See Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012).[3]  Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (citation omitted).

---

[2] Plaintiff relies heavily on Morgan v. Sundance, Inc., 142 S. Ct. 1708 (2022), and Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019), for his argument that courts have been applying the FAA too broadly and the Supreme Court has reminded lower courts not to "make up a new procedural rule based on the FAA's policy favoring arbitration." Morgan, 142 S. Ct. at 1714 (internal quotation omitted).  Morgan is relevant to the waiver analysis set forth below, but I disagree with plaintiff to the extent she is arguing that these two cases signal a retreat from the policy of the FAA favoring arbitration.  These cases merely remind courts to treat arbitration agreements like any other contract, not like some kind of "super-contract."  See id. at 1713 ("[A] court must hold a party to its arbitration contract just as the court would to any other kind.").

[3] Neither party asserts that any law other than that of New York should apply to this issue.

II.     **Analysis**

    A.  **Arbitrability**

There is no dispute in this case as to the application of factors 2, 3, and 4 above.  The

scope of the arbitration agreement plainly includes the claims at issue here, as the agreement

covers all claims arising out of or relating to plaintiff's employment or her termination.  The law

is clear that FLSA claims are subject to arbitration, see Rodriguez-Depena v. Parts Auth., Inc.,

877 F.3d 122, 123-24 (2d Cir. 2017), as are NYLL claims, see Sutherland v. Ernst & Young

LLP, 726 F.3d 290, 292 n.1 (2d Cir. 2013).  For the same reasons, this is not a "split claim" case

where some but not all of plaintiff's claims fall within the arbitration agreement.

The only disputed issue as to arbitrability is whether the parties agreed to arbitrate.  That

issue also seems straightforward.  The arbitration agreement is signed by both plaintiff and ADO

(under its prior name).  Plaintiff does not claim that she did not know or was unable to appreciate

that she was voluntarily agreeing to submit claims arising out of her employment to arbitration.

Instead, plaintiff argues that the arbitration agreement is invalid because plaintiff's

counterparty was not in existence at the time she signed the arbitration agreement.  There is no

dispute that the named defendant in this suit – Ajilon Professional Staffing LLC ("APS LLC") –

was inactive before plaintiff's employment.  But APS LLC was not the party that signed the

arbitration agreement and not the entity that hired plaintiff.  The arbitration agreement instead

states that plaintiff's counterparty is "Accounting Principals dba Ajilon, Parker + Lynch."

However, plaintiff has also submitted documentation purporting to show that Accounting

Principals, Inc. has been inactive since 2005.  Since Accounting Principals, Inc. was inactive,

any contracts it signed, according to plaintiff, are not enforceable.  Defendants, in response, have

submitted documents filed with the New York Department of State showing that ADO has

remained active since 2004: starting out as Accounting Principals Acquisition Corp. in 2004; then becoming Accounting Principals, Inc. in 2005; and ADO Professional Solutions, Inc. in 2021.

These seemingly conflicting corporate records – one showing that Accounting Principals, Inc. became inactive in 2005, and others showing that Accounting Principals, Inc. was active from 2005 to 2021 – can be reconciled by looking at the "Merger History" for these entities reported on the New York Department of State's website.[4]  In fact, there were two companies named Accounting Principals, Inc.

On December 24, 2004, the entity now operating as ADO Professional Solutions, Inc. – then operating as Accounting Principals, Inc. – acquired another entity named Accounting Principals, Inc.  The records submitted by plaintiff reflect the termination of the target company "Accounting Principals, Inc." – but the surviving Accounting Principals, Inc. was active from 2005 to 2021.  It thereafter continued to be active under a name change to ADO Professional Solutions, Inc.

The arbitration agreement, signed by Accounting Principals, Inc. and plaintiff in 2019, is consistent with this timeline.  True, the "Inc." designation does not appear after "Accounting Principals" in the agreement.  But according to the New York Department of State website, there is no entity other than Accounting Principals, Inc. that used the appellation "Accounting Principals" during that time.  And there is no entity involved in the facts giving rise to this case called "Ajilon Professional Staffing LLC," the defendant that plaintiff has named.

---

[4] The Court takes judicial notice of the information reflected on the New York Department of State website.  See Commissions Imp. Exp. S.A. v. Republic of the Congo, No. 19-misc-195, 2020 WL 13560108, at *2 (S.D.N.Y. May 11, 2020) (taking judicial notice of information on the New York State Department of State online registry).

Case 2:21-cv-06081-BMC   Document 30   Filed 11/14/22   Page 8 of 19 PageID #: 266


Plaintiff cannot avoid the arbitration agreement by claiming that she signed it with a defunct entity, the name of which does not appear on the agreement.[5]  Aside from the arbitration agreement itself, ADO has submitted enough evidence to prove that it, and not the now-defunct "Accounting Principals, Inc." or Ajilon Professional Staffing LLC, hired plaintiff.

Plaintiff's related argument is that she cannot be forced to litigate against ADO or API because they are not parties to this action.  Usually, when a plaintiff misnames a defendant, the name is corrected on consent, see e.g. Rozier v. Financial Recovery Sytems, Inc., No. 10-cv-3273, 2011 WL 2295116, at *1 n. 1 (E.D.N.Y. June 7, 2011), or the court simply orders it *sua sponte*, see Hylton v. New York Methodist Hosp., 708 F. Supp. 2d 248, n.1 (E.D.N.Y. 2009). Plaintiff doesn't want to consent to that, however, because she needs to maintain the purported separateness of ADO, API, and APS LLC if she is to avoid arbitration.  But for the reasons set forth above, she cannot.  The documents that ADO has submitted demonstrate, first, that ADO is simply a name change from API, and second, that APS LLC is not the entity that employed plaintiff because, as plaintiff acknowledges, it was defunct more than ten years before plaintiff started working for ADO.[6]

ADO probably should have moved to substitute in for APS LLC when it became aware that plaintiff was not consenting to the substitution, rather than just assuming that it could appear

---

[5] Plaintiff asserts that she sued Ajilon Professional Services LLC because ADO sent her one or more emails using the name "Ajilon."  Her lawyer therefore looked for a company named "Ajilon" and found the defunct "Ajilon Professional Services LLC."  However, ADO's use of the d/b/a "Ajilon" in its emails is consistent with plaintiff's arbitration agreement, which referenced that ADO (through its prior name) was doing business as "Ajilon, Parker + Lynch."  As FEI's submissions make clear, this d/b/a was shortened to the trade name "Ajilon" for ease of reference; FEI still refers to ADO as "Ajilon;" and so does ADO itself – hence, the emails.  Moreover, plaintiff does not assert that the email or emails on which she relied used the name of the defunct company, "Ajilon Professional Staffing LLC."

[6] I don't know what plaintiff hopes to achieve by keeping APS LLC as the sole defendant.  Even though APS LLC is in default, it seems extremely unlikely that plaintiff is going to be able to execute a judgment against a company that's inactive.  That would leave plaintiff with the prospect of conducting post-judgment proceedings arguing that ADO is the successor to APS LLC, which is flatly inconsistent with the position she has taken on these motions. The Court will direct amendment of the caption to reflect this reality.

for the incorrectly named defendant under its own name.  See Felder v. United States Tennis Ass'n, Inc., No. 17-cv-5045, 2018 WL 5621484, at *1 n.2 (S.D.N.Y. Oct. 30, 2018) (allowing defendant, on a motion to dismiss, to "conform the pleadings to the proof" by substituting the correct entity).  However, the failure to request that relief is immaterial, as the Court surely would have granted it based on the showing that ADO has made, and it therefore grants that relief now.  ADO may have skipped a step, but that failure would be a poor reason to ignore the corporate records establishing the proper defendant, i.e., the defendant with which plaintiff was employed.  Making ADO go back and do it over would be inconsistent with the command "to secure the just, speedy, and inexpensive determination of every action and proceeding" in Federal Rule of Civil Procedure 1.

Alternatively, plaintiff argues that even if she is obligated to arbitrate employment claims against ADO, she is not obligated to arbitrate her claims against FEI.  However, the arbitration agreement says otherwise.  It provides that: "The agreement to arbitrate includes any Claims that the Company may have against Employee, and/or that Employee may have against . . . Company Client(s) . . . ."  Plaintiff argues that the term "Company Client" is ambiguous, but she offers no interpretation of this language other than that it refers to those companies, like FEI, which hire ADO to help with their staffing needs.  No reasonable jury could find that it means anything else. Having determined that ADO was plaintiff's employer, and giving "clients" of ADO its ordinary meaning, it follows that FEI is entitled to the benefit of the arbitration agreement.

Finally, plaintiff argues that even if the arbitration agreement covers ADO employees' claims against FEI, FEI somehow loses that protection pursuant to its separate contract with ADO (the "FEI/ADO agreement") – that is, the contract by which ADO agreed to hire individuals who could meet FEI's needs (including, among other terms, the fee for ADO's

services).  Plaintiff points to the language in that contract stating: "The parties agree that the relationship between them is that of independent contractor and that neither party shall have any authority to represent or bind the other and that neither party shall hold itself out or have any authority as an agent of the other for any purpose whatsoever."

Plaintiff's reasoning based on that sentence proceeds like this: (1) the arbitration agreement waives both signatories' right to proceed in court before a jury; (2) the FEI/ADO agreement, in the language quoted above, prevents ADO from acting as FEI's agent; and (3) since ADO could not act as FEI's agent in waiving FEI's right to proceed in court before a jury, FEI cannot rely on the arbitration clause.

Plaintiff's axioms are valid, but her conclusion creates a false syllogism.  FEI, like ADO, has moved to arbitrate.  The disclaimer of a general agency relationship in the FEI/ADO agreement does not prevent FEI from accepting those benefits that ADO obtains in its contract with its employees.  Perhaps FEI would have an argument to avoid arbitration if it wanted to proceed in court, but it doesn't want to proceed in court.  It is happy to avail itself of the arbitration agreement and its inclusion within that agreement.  It is not plaintiff's place to tell FEI that it might have an "out" when FEI is not interested in one.

Plaintiff's arguments are creative but ultimately unpersuasive.  This is a straightforward arbitration agreement that plaintiff entered into with ADO under its prior name, and the agreement clearly includes the claims that plaintiff has raised.

## III.    Waiver by conduct

Plaintiff argues that even if the case is arbitrable, ADO and FEI have waived their respective rights to arbitration by doing nothing from the time they were served in November 2021 until they filed their motions to compel arbitration in August 2022.  Plaintiff asserts that

FEI's conduct was even worse than that of ADO in terms of waiver in two respects.  First, FEI

answered the complaint without asserting the compulsory affirmative defense of arbitration.

Second, FEI misled plaintiff and the Magistrate Judge into thinking that it wanted to mediate her

claims, but after the Magistrate Judge referred the case to court-annexed mediation at the mutual

request of FEI and plaintiff in March 2021, and the parties spent considerable time before they

picked a mediator in July 2022, FEI unilaterally pulled out of the mediation before the first

session.  Plaintiff correctly points out she does not need to show that she was prejudiced for a

finding of waiver, see Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1712 (2022), but she argues

that, in fact, she has been prejudiced by the delay in obtaining discovery through FEI's pseudo-

effort at mediation.

   Prior to Morgan, courts within this Circuit considered three factors to determine if a party

had waived its right to arbitrate: "(1) the time elapsed from when litigation was commenced until

the request for arbitration; (2) the amount of litigation to date, including motion practice and

discovery; and (3) proof of prejudice."  La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce,

Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (citations omitted).  The most important

of these factors was prejudice.  Id.  However, Morgan eliminated the prejudice requirement.

The question is – what's left?

   The ready answer is that if Morgan strips away one out of three factors, then there are

two factors left.  (I will refer to this as the "stripped-down arbitration standard.")  But as Judge

Woods recently pointed out in an insightful decision, Herrera v. Manna 2nd Avenue LLC, No.

20-cv-11026, 2022 WL 2819072, at *7–8 (S.D.N.Y. July 18, 2022), that may be wrong.  The

waiver test used in this Circuit pre-Morgan was an arbitration-specific test.  And as Morgan

makes clear, there can be no special arbitration tests that go beyond the requirements of the

common law when it comes to a waiver of contractual rights.  See Morgan, 142 S. Ct. at 1713

("[A] court must hold a party to its arbitration contract just as the court would to any other

kind.").  Although Judge Woods did not determine whether the stripped-down arbitration

standard or the common law standard should apply (finding that neither standard was satisfied),

my conclusion based on Morgan is that applying waiver to an arbitration agreement should be

the same as applying waiver in the context of any other kind of contract.[7]

The most basic requirement of the common law doctrine of contractual waiver is that

there must be a knowing and voluntary surrender of a contractual right.  Herrera concisely stated

the law:

> Waiver requires a clear manifestation of an intent to relinquish [a] known right.
> Waiver may be established by affirmative conduct or by a failure to act that
> evinces the intent to abandon the right.  But waiver should not be lightly
> presumed and must be based on a clear manifestation of intent to relinquish a
> contractual protection.  Mere silence, oversight or thoughtlessness in failing to
> object is insufficient to support an inference of waiver.  While such a waiver may
> be express or implied, the intent to waive must be clearly established and cannot
> be inferred from doubtful or equivocal acts or language, and the burden of proof
> is on the person claiming the waiver of the right.

2022 WL 2819072, at *8 (citations and quotations omitted).  Applying this standard, neither

ADO nor FEI has taken or failed to take any action that rises to the level of a clear manifestation

of intent to forego arbitration.

Plaintiff's primary basis for alleging waiver as to ADO is that APC LLC has defaulted.

But as explained above, that is simply because plaintiff sued a defunct LLC instead of plaintiff's

employer.  No wonder it took awhile for the summons and complaint to get to ADO when

---

[7] Herrera noted that the Morgan court appeared to allow a stripped-down version of the Eighth Circuit's arbitration-specific test.  See Herrera, 2022 WL 2819072, at *7.  But the Court noted that "the rest Eighth Circuit's test asks" whether the defendant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." Morgan, 142 S. Ct. at 1714.  And as Judge Woods noted, the holding of Morgan is clear that there should not be an arbitration-specific waiver standard.  See Herrera, 2022 WL 2819072, at *7.

plaintiff had served a company that had been defunct for more than 10 years.  As soon as ADO came into the case, it sought arbitration.

An affidavit from FEI's attorney avers that he did not become aware of the arbitration clause in plaintiff's employment contract with ADO until July 18, 2022.  I take that as true, but it does not tell the whole story of why FEI didn't know about it earlier.  I have no affidavit from FEI itself, saying, for example, that FEI did not have the arbitration agreement, or that it is not the practice of FEI to receive or retain a copy of an ADO employee's contract with ADO, and thus FEI didn't know about it.  And by wording his affidavit carefully to say he "became aware" of the arbitration agreement on July 18, 2022, FEI's attorney has not excluded the possibility that he had the employment agreement well prior to that date but failed to thoroughly review it.

It therefore is possible that somewhere in FEI's files, there was a copy of the employment agreement that FEI had received from ADO that FEI should have turned over to its attorney or, if it did, that its attorney should have found and reviewed.  However, that would be ordinary negligence.  It does not rise to the level of a voluntary relinquishment of FEI's right to arbitrate. See Rsch. Frontiers Inc. v. Prelco Inc., No. 18-cv-2939, 2020 WL 6746730, at *5 (E.D.N.Y. Nov. 17, 2020) ("A [contractual] waiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage.") (cleaned up)).  Moreover, even assuming that FEI led plaintiff down a primrose path towards mediation for a couple of months before pulling out, that does not constitute the level of activity that would amount to a voluntary waiver of a known right.  See id. ("[S]ilence and inaction do create an implied waiver, where . . . there is proof that there was a voluntary and intentional relinquishment of a known and otherwise enforceable right.").[8]

---

[8] Nor does FEI's failure to raise arbitration as an affirmative defense in its answer constitute waiver.  FEI's answer was filed on November 26, 2021, but counsel for FEI did not become aware of the agreement to arbitrate until July

**IV.     Standing to pursue NYLL §§ 193, 195 claims**

NYLL § 195(1) requires employers to provide to new employees a wage notice at the time of hiring ("time of hiring notice") that sets forth the employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay.  Section 195(3) requires the employer to provide, for each pay period, a statement ("wage statement") showing how that pay was computed including deductions.  Section 198(1-b) provides, in part, that if the employer does not provide the time of hiring notice, the employee shall recover the sum of $50 per work day up to a maximum of $5000.  Section 198(1-d) provides, in part, that if the employee does not receive the wage statement, she may recover $250 per work day up to a maximum of $5000.  Plaintiff alleges that she received neither kind of notice and therefore is entitled to recover an additional $10,000.

FEI (but not ADO) contends that plaintiff has no standing to pursue her NYLL §§ 195 and 198 claims in federal court.  Its argument derives from TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), in which the Supreme Court clarified that Article III standing does not exist simply because a technical violation triggers a statutory damage award – the plaintiff must still demonstrate an actual and concrete injury to have a claim under the statute.  FEI contends that NYLL §§ 195 and 198 are just that kind of statutes, requiring no injury for a plaintiff to have a right to recover statutory damages.  FEI relies on several decisions by Judge Chen in this district so holding.  See Wang v. XBB, Inc., No. 18-cv-7341, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim."); see also Sevilla v.

---

18, 2022.  And "[e]ven if [FEI] failed to plead or inadequately pleaded arbitration as an affirmative defense, this fact would be insufficient to establish waiver."  Pierre v. Rochdale Vill. Inc., No. 18-cv-6383, 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020).

<u>House of Salads One LLC</u>, No. 20-cv-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); <u>Francisco v. NY Tex Care, Inc.</u>, No. 19-cv-1649, 2022 WL 900603, at *1 (E.D.N.Y. Mar. 28, 2022).

Plaintiff, in contrast, points to § 198(1) (*i.e.*, the first paragraph, not having a lettered subsection as do the following paragraphs) and § 198(1-a) through § 198(1-d).  Section 198(1) provides, in relevant part: "In any action instituted upon *a wage claim* by an employee or the commissioner *in which the employee prevails*, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs."  (emphasis added.)  Plaintiff construes each of the other paragraphs in § 198(1), *i.e.*, § 198(1-a) through § 198(1-d) as dependent clauses of § 198(1).  That would mean that the prerequisite to liability under § 198(1) – that an employee must have a "wage claim" upon which she "prevails" – carries over to § 198(1-a) through § 198(1-d).  Because plaintiff must therefore prove a wage claim before she can recover for failure to provide a time-of-hiring notice or wage statements, plaintiff argues, it therefore follows that she must have sustained an actual and concrete injury – the failure to receive wages that were due.

In other words, under plaintiff's view, no employee who has been duly paid as required under the New York Labor Law can maintain a stand-alone action for failure to provide a time-of-hiring notice or wage statements.  It is as if the statutory damages for those violations are similar to liquidated damages for willful failure to pay wages, <u>see</u> NYLL § 198(1-a) – they are simply an additional element of damages where an employee has been underpaid and not provided with the required notice and statements.

This dependent clause argument has some attraction.  Section 198 has three separately numbered subsections, and only § 198(1) has three sub-subsections (it skips over §198(1-c))

15

within it.  That suggests some interrelationship.  That is particularly compelling because the New York Legislature has shown that when it wants to provide for independent rights in the Labor Law, it does it, at least in some instances, through separate sections, not sub-subsections.  See e.g., NYLL §§ 191, 191-a, 191-b, and 191-c.  Indeed, § 198 itself is followed by separate sections §§ 198-a, 198-b, 198-c, 198-d, and 198-e; other than by incorporation by express reference in some of those, these appear to stand apart from § 198 and its various sections and subsections.

However, a closer reading of the statute requires rejection of plaintiff's argument.  The subsections of § 198(1) which we are considering, § 198(1-b) (recovery for failure to provide a time of hiring notice) and § 198(1-d) (recovery for failure to provide wage statements), each creates two paths to recovery.  The action for their violation can be brought by the employee, or it can be brought by the Commissioner of the New York State Department of Labor.  There are several differences between these paths to recovery, but for our purposes, the material one is that in an action brought by the Commissioner, "it shall be an affirmative defense that . . . the employer made complete and timely payment of all wages due . . . to the employee who was not provided [a time of hiring notice]."  NYLL § 198(1-b).  In parallel, § 198(1-d) provides that in an action brought by the Commissioner, "it shall be an affirmative defense that … the employer made complete and timely payment of all wages due … to the employee who was not provided [with wage statements]."

Note that this affirmative defense of full payment of wages is only available in an action brought by the Commissioner.  It is not available in an action brought by the employee.  If we are going to apply the canon of statutory interpretation that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or

insignificant", <u>Corley v. United States</u>, 556 U.S. 303, 314 (2009); <u>see also</u> <u>Nadkos, Inc. v.</u>
<u>Preferred Contractors Ins. Co. Risk Retention Grp. LLC</u>, 34 N.Y.2d 1, 7, 108 N.Y.S.3d 375, 378
(2019), this would mean that full payment of wages does not preclude a fully-paid employee
from bringing an action solely for the failure to provide a time-of-hiring notice or wage
statements.

That may be a laudable means of incentivizing employers to provide the required
paperwork.  But it is not sufficient for standing under <u>Ramirez</u> because it allows recovery by an
employee despite the absence of any actual and concrete injury arising from the lack of
paperwork.

Plaintiff's alternative argument is that <u>Ramirez</u> itself implies that standing will obtain
when a plaintiff seeks recovery for "informational injury."  As the Court stated in <u>Ramirez</u>: "The
plaintiffs did not allege that they failed to receive any required information.  They argued only
that they received it *in the wrong format*."  141 S. Ct. at 2214.  Deprivation of information,
plaintiff correctly points out, is exactly the statutory violations at which §§ 198(1-b) and 198(1-
d) are targeted.

However, <u>Ramirez</u> does not mean that *any* deprivation of information will automatically
create standing.  Informational injury cannot be a separate category that stands independent from
the bedrock requirement of actual and concrete injury.  It is easy enough to see where a failure to
provide accurate information would lead to injury.  Suppose, for example, that a home purchaser
makes a down payment on the assumption that she has a great credit rating.  Unbeknownst to
her, however, her credit report contains inaccurate information that materially disparages her
credit to the point where she cannot get a mortgage and so loses both the home and her down
payment.  That informational injury is obviously sufficient to create standing.  But there is

nothing like that alleged in this case.[9]  Plaintiff's complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements. Indeed, I think it is doubtful that the mere violation of §§ 198(1-b) and 198(1-d) could ever give rise to accompanying injury sufficient for standing purposes.

The lack of standing means that the Court does not have subject matter jurisdiction over plaintiff's §§ 195 and 198 claims.  See Ramirez, 141 S. Ct. at 2214 ("No concrete harm, no standing.").  And it seems axiomatic that if the Court lacks subject matter jurisdiction over a claim, it cannot refer that claim to arbitration.  See Daly v. Citigroup Inc., 939 F.3d 415, 426 (2d Cir. 2019) ("[I]f [we] must dismiss the complaint for lack of subject matter jurisdiction, the [defendants'] defenses and objections become moot and do not need to be determined.").  The proper remedy, instead, is the dismissal of those claims without prejudice to recommencement in state court where there is no Article III standing requirement.  The state court, if a motion to compel arbitration as to those claims is made, can determine their amenability to arbitration.

## CONCLUSION

Defendants' motions to compel arbitration are granted, except as to plaintiff's claims under NYLL §§ 195 and 198.  Those claims are dismissed without prejudice to plaintiff asserting them in state court or in arbitration.

The remainder of the action is stayed pending any final determination of an arbitral tribunal.  The stay shall be implemented by administrative closure of the case, and the case will

---

[9] Plaintiff argues that she was injured by the defendants' alleged failure to provide her with wage statements because this caused her to expend additional resources in litigating the issue of what entity was plaintiff's "employer."  This argument is unconvincing.  Plaintiff cannot rely on alleged injuries suffered in the course of litigating her claims to establish standing for those claims.

be reopened upon request of any party within 60 days of the final determination of the arbitral

tribunal.  Plaintiff shall commence the arbitration within 30 days of entry of this decision and

advise the Court that she has done so.  If she chooses not to commence arbitration, the case will

be dismissed.

Finally, the Clerk of Court is directed to substitute ADO PROFESSIONAL

SOLUTIONS, INC. f/k/a Accounting Principals, Inc. as a defendant in this action in place of

AJILON PROFESSIONAL STAFFING LLC in the caption of this case.


**SO ORDERED.**

Digitally signed by
Brian M. Cogan

_____
                                      U.S.D.J.


Dated:  Brooklyn, New York
          November 14, 2022

19